IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

RYAN K. ROZAK,

                Plaintiff,

  v.

RANDALL R. HEPP, GEORGE COOPER,
MARC W. CLEMENTS, HOLLY MEIER,
CHARLES LARSEN, CHRIS KRUEGER,
JOHN MAGGIONCALDA, MICHAEL MCCORMICK,
MARK SCHOMISCH, GREG PAHL,
NURSE MOORE, JOE PRZYBYLINSKI,
and CAPTAIN KUHOLK,

                Defendants.

ORDER

15-cv-134-jdp

---

NORMAN STAPLETON,

                Plaintiff,

  v.

RANDALL R. HEPP and EDWARD F. WALL,

                Defendants.

ORDER

16-cv-406-jdp

---

Plaintiffs Ryan Rozak and Norman Stapleton are both litigating cases about the unsafe levels of lead and copper in the water supply of the Fox Lake Correctional Institution. They are currently represented by the same volunteer attorneys, who have filed a motion in both cases to appoint and compensate two impartial experts under Federal Rule of Evidence 706: (1) a medical professional or toxicologist; and (2) an engineer specializing in water quality and treatment. Plaintiffs ask that the state pay the experts up front, with those costs charged along with the other costs at the end of the litigation.

I agree with plaintiffs that this case involves complex, specialized issues regarding both the quality of the water and the effects that water had on them. I also reject defendants' argument that plaintiffs should rely on the consultants already hired by the Department of Administration to remediate the problem. There is good reason to believe that those consultants cannot serve as impartial witnesses, given their previous work on the FLCI water supply. So I will grant plaintiffs' motion to appoint experts in both cases. At this point, I will assume that the same experts will be able to serve in both cases.

The next question is how to locate these experts. As envisioned by Rule 706(a), I will ask the parties to submit nominations after conferring with each other. Plaintiffs state that they would prefer local experts given their familiarity with Wisconsin water regulations, but at this point, it is up to them and defendants to find experts they deem acceptable. I will give the parties a deadline to inform the court about their progress in locating experts and the projected cost of the appointments.

That leaves the question of compensation. As a starting point, plaintiffs and defendants should split the cost of these experts 50/50. I agree with defendants that plaintiffs' share can come from the court's pro bono reimbursement fund, to the extent that plaintiff's share is within the fund's disbursement limits. So when prepayment time comes, plaintiffs' counsel should seek disbursement of funds from the pro bono fund for that purpose. The court will not require plaintiffs' volunteer counsel to go out of pocket for the cost of the experts. So if the cost of plaintiffs' share exceeds the amount available from the pro bono fund, the court will expect the state to pay the rest, within reason. Plaintiffs should be forewarned: this is not a blank check. The court expects that the cost of the court-appointed experts will be reasonable, and the expenses of the engagement will be pre-approved by the court.

## B. Release account funds

Plaintiff Rozak has filed a motion asking me to issue an order directing Fox Lake officials to allow him to use funds from his release account to pay the remainder of his filing fee for that action. Dkt. 61 in the '134 case. Rozak says that prison officials will authorize the use of his release account funds if the court orders the funds to be released. But that still leaves the question whether this court has the authority to order the DOC to release the funds.

It is up to prison officials to decide how to apply the release-account regulations; this federal court generally cannot tell state officials how to apply state law. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984). There is no federal law permitting this court to require state officials to submit the lump-sum remainder of a filing fee by accessing a prisoner's release account funds. It is only when a prisoner's general account has insufficient funds to pay an initial partial filing fee payment that the Prisoner Litigation Reform Act permits this court to order an institution to access a prisoner's release account funds to satisfy that payment. *See, e.g., Mosby v. Wommack*, No. 08-cv-677, 2009 WL 2488011 (W.D. Wis. Aug. 12, 2009) ("[W]ith the exception of initial partial payments, [federal district courts] do not have the authority to tell state officials whether and to what extent a prisoner should be able to withdraw money from his release account."); *see also Artis v. Meisner*, No. 12-cv-589, 2015 WL 5749785, at *5-6 (W.D. Wis. Sept. 30, 2015) ("Absent some authority *requiring* the prison to disburse [petitioner's] release account funds, the court declines to interfere in the administration of Wisconsin state prisons . . . ." (emphasis in original)). Therefore, I will deny Rozak's motion for the use of his release account funds.

ORDER

IT IS ORDERED that:

1. Plaintiffs Ryan Rozak and Norman Stapleton's motion to appoint experts in the above-captioned cases, Dkt. 61 in case no. 15-cv-134-jdp, is GRANTED.

2. The parties may have until July 10, 2017 to update the court on their progress in locating a medical or toxicology expert and a water expert, and the projected cost of the appointments.

3. Plaintiff Rozak's motion for the use of release account funds, Dkt. 63 in the '134 case, is DENIED.

Entered June 9, 2017.

BY THE COURT:

/s/

JAMES D. PETERSON
District Judge